# EXHIBIT A



**NOTICE: THIS DOCUMENT**
**CONTAINS SENSITIVE DATA**

CASE NO.



SAMUEL L. OWENS

Plaintiff

vs.

CPS Energy

Defendant

§

§

IN THE DISTRICT COURT

045TH JUDICIAL DISTRICT

BEXAR COUNTY, TEXAS

**PLAINTIFF'S ORIGINAL PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

AFFIDAVIT OF
INABILITY

Plaintiff, *SAMUEL L. OWENS* ("Plaintiff") files this Petition complaining of Defendants *CPS ENERGY* ("Defendant"), and states as follows:

**I. DISCOVERY LEVEL**

1.     Pursuant to Rules 190.1 and 190.3 of the Texas Rules of civil Procedure, Plaintiff intends to conduct discovery under Level 2.

**II. NATURE OF THE SUIT**

2.     This lawsuit arises from the Defendant's Race and Color Discrimination, specifically Mr. David Miller, Manager, (Caucasian) towards the Plaintiff choosing him for a random urinalysis testing. This is a violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 Chapter 21 U.S.C. § 1981.This will prohibits racial discrimination in employment.

3.     Plaintiff, *SAMUEL L. OWENS*, has never given his Managers nor Supervisors any reason to chose him for this embarrassing random urinalysis testing.

4.     Plaintiff, *SAMUEL L. OWENS,* did file a complaint against Mr. Shan Davis (Caucasian) for invading his personal space, yelling and pointing his finger in Plaintiff's face. Plaintiff believes that this was the reason for Defendants to isolate him and request an embarrassing random urinalysis testing.



**DOCUMENT SCANNED AS FILED**

5.      Plaintiff, *SAMUEL L. OWENS,* also believes that the Defendants were counting on him to fail the urinalysis testing.

6.      Plaintiff filed this complaint with David Miller, Pole Crew Manager, Richard Lujan, Director of Distribution Construction and Maintenance and Human Resource Manager Ms. Clevette Hall.

7.      Plaintiff feels that this complaint triggered his randomly embarrassing urinalysis testing.

8.      Defendant is supposed to follow the U.S. Department of Transportation Office of the Secretary, Office of Drug & Alcohol Policy & Compliance Manual, in which it specifically states that:

Reasonable Suspicion/Cause: You are required to submit to any test (whether drug, alcohol or both) that a supervisor requests based on reasonable suspicion. Reasonable suspicion means that one or more trained supervisors reasonably believes or suspects that you are under the influence of drugs or alcohol or both. They cannot require testing based on a hunch or guess alone; their suspicion must be based on observation concerning your appearance, behavior, speech and smell that are usually associated with drug or alcohol use.

9.      Plaintiff, *SAMUEL L. OWENS,* has never portrait any of these offenses, before, during or after his shift.

This Manual also specifically states (page 5) under the Random section:

You are subject to unannounced random drug & alcohol testing. Alcohol testing is administered just prior to, during or just after performing safety-sensitive functions. Depending on the industry specific regulations, you may only be subject to random drug testing.

No manager, supervisor, official or agent may select you for testing just because they want to. Under DOT regulations, employers must use a truly random selection process. Each employee must have an equal chance to be selected and tested.

Based on the DOT (*DOT Agency* means an agency (or "operating administration") of the United States Department of Transportation administering regulations requiring alcohol and/or drug testing (14 CFR parts 61, 63, 65, 121, and 135; 49 CFR parts 199, 219, 382, and 655), in accordance with part 40 of this title.) regulations it specifically states that:

*Actual knowledge* for the purpose of subpart B of this part, means actual knowledge by an employer that a driver has used alcohol or controlled substances based on the employer's direct observation of the employee, information provided by the driver's previous employer(s), a traffic citation for driving a CMV while under the influence of alcohol or controlled substances or an employee's admission of alcohol or controlled substance use, except as provided in §382.121. Direct

DOCUMENT SCANNED AS FILED

observation as used in this definition means observation of alcohol or controlled substances use and does not include observation of employee behavior or physical characteristics sufficient to warrant reasonable suspicion testing under §382.307.

10.     Just prior to the testing event, you will be notified of your selection and provided enough time to stop performing your safety sensitive function and report to the testing location.  Failure to show for a test or interfering with the testing process can be considered a refusal.

11.     Plaintiff would like to state that he was being chosen because of his Race and Color. Upon Plaintiff's scholastic research he found that, if an employer discriminates against an employee based on race in decisions on hiring, firing, promotion, demotion, compensation, or other terms of employment, the courts can hold the employer responsible for the victim's damages.

12.     Plaintiff would also like to state that this was done purposely, because he was being pushed out of his position with the Defendants employment, so that another person with a different Race and Color can fill his position.

13.     Plaintiff also believes that soon after the complaint the Defendant wanted to terminate his employment because they thought that he was going to be problematic for them.

14.     Therefore, Plaintiff feels that this action is filed to sue the Defendants for emotional and mental anguish and adjustment disorder with mixed features of anxiety and depression after experiencing humiliation by choosing Plaintiff for a randomly embarrassing urinalysis testing.

15.     Plaintiff, *SAMUEL L. OWENS,* would like to recover all damages caused by Defendant's Race and Color Discrimination, which is a violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981, and statutory damages as allowed by law, Legal Assistant's fees pre and post-judgment interest, costs and all other relief to which Plaintiff is entitled.

### III. PARTIES

1.     Plaintiff, *SAMUEL L. OWENS* is an individual residing at 2600 NE Loop 410, San Antonio, Texas 78217.

2.     Defendant, *CPS ENERGY,* with its principal place of business located on 145 Navarro St, San Antonio, TX 78205.

3.     Defendant, David Miller, Pole Crew Manager

4.     Defendant, Gilbert Brown, Labor Crew Manager

5.     Defendant, Richard Lujan, Director of Distribution, Construction & Maintenance

6.     Ms. Clevette Hall, Human Resources Representative

DOCUMENT SCANNED AS FILED

These are individuals that are the alter egos of the Defendant, *CPS ENERGY* holding them liable for the allegations of Racial Discrimination at the workplace which is against the law, <u>Title VII of the Civil Rights Act of 1964</u> Chapter 21. It is unlawful to harass a person because of that person's race. Plaintiff thus respectfully requests that the Court disregard the corporate form and pierce the corporate veil to hold *CPS ENERGY* jointly and severally liable for each others obligations in an equitable manner.

## IV. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this lawsuit because the amount in controversy is within the jurisdictional limits of this Court.

· Pursuant to Chapter 15 of the TEX. CIV. PRAC. AND REM. CODE, venue is proper in Bexar County, Texas in that all or a substantial part of the acts or omissions giving rise to this action arose in Bexar County, Texas.

## V. BACKGROUND

Plaintiff started his employment with the Defendant on or about June 6, 2009. Plaintiff wanted to start his carrier with the Defendant believing that this was a permanent position for him. Plaintiff soon discovered that this environment became very hostile.

On May 8, 2018, Plaintiff, *SAMUEL L. OWNES,* started his day like every other employee with the Defendant.

Plaintiff reported to work at 6:30 a.m. Mr. David Miller, Pole Crew Manager, (Caucasian), approached the Plaintiff (African-American) and ordered him to take a drug test that morning. Plaintiff thought nothing of the request and set about to the lab to comply with the Defendant's request.

Plaintiff submitted himself for this urinalysis test around 6:33 a.m. in which he had three hours to provide an urinate sample. Plaintiff of course could not urinate at that time because he had already emptied his bladder before he reported to the Defendants.

Plaintiff immediately consumed water and tea, but he still could not provide a urine sample. Plaintiff knew that he had (three) 3 hours to provide a urine sample to the lab. He continued to consume water and tea.

Plaintiff became concerned at that time. Plaintiff claims that he had never been in this kind of predicament. At that time Quest Diagnostics representative informed him that "worst case scenario" if

DOCUMENT SCANNED AS FILED

he could not provide a urine sample within (three) 3 hours it would be considered a "refusal". The Lab representative then contacted Ms. Clevette Hall, *CPS ENERGY*'s Human Resources representative, and made her aware of the Plaintiff's challenges.

Immediately thereafter, Plaintiff was called into a meeting with his Superiors, David Miller, Gilbert Brown, Richard Lujan and Human Resource representative Ms. Clevette Hall.

Plaintiff states that during this meeting one of the mangers noted that matter of fact the Plaintiff just experienced a "shy bladder". Defendants ordered him to obtain a medical release from a doctor within the next five (5) days. Human Resources representative Ms. Hall also gave the Plaintiff a medical review officer's ("MRO") contact information.

Plaintiff then stated that the Defendants ordered him to surrender his badges because he was under suspension. What happened next are a series of suspicious acts culminating into the ultimate act of injustice.

Plaintiff states that the Defendants, *CPS ENERGY,* failed to provide the Plaintiff with the correct contact information for the CPS' MRO, Dr. Pascale. As a result, the Plaintiff was forced to research the contact information on his own.

Eventually, the Plaintiff found and spoke with Dr. Pascale. Plaintiff stated that Dr. Pascale was very unalarmed. The MRO, a CPS agent, suggested that the Plaintiff simply reschedule another urinalysis test.

Plaintiff did just that. Plaintiff spoke with the Human Resources Ms. Hall and conveyed Dr. Pascale's suggestions and recommendations for a retest of the urinalysis. Dr. Pascale also recommended that there was no pre existing medical condition of the Plaintiff.

The Defendants totally refused to give the Plaintiff another chance for a retesting of the urinalysis to prove that he is not using any drugs nor alcohol.

Plaintiff had been a valuable employee for (nine) 9 years and his Superiors should have given him a chance to retest for a urinalysis or accept Dr. Pascale's recommendations.

Plaintiff wants to state that he did not refuse the urinalysis test, he just could not provide a urinalysis test because he had just urinated before he was chosen for this urinalysis test.

DOCUMENT SCANNED AS FILED

The DOT regulations clearly states that Alcohol testing, should however, may only be conducted just before, during, or just after the performance of safety-sensitive functions. A safety-sensitive function as defined in §382.107 means any of those on-duty functions set forth in §395.2

Plaintiff clearly did not operate his vehicle under any drug nor alcohol influence. He also never endangered the public with his vehicle. He also has a clear record for any accidents with his company vehicle.

After the Plaintiff realized that he had been mistreated by his Superiors he immediately contacted his union representative. He was advise to go to an independent urinalysis test site and submit to such testing.

Plaintiff immediately found an independent site, in which he found the Texas Med Clinic. Plaintiff commissioned a urinalysis test and even wanted to pay out of pocket for such testing.

During the visit, a clinic representative phoned the Defendant, *CPS ENERGY*, to let them know that the Plaintiff was at their site to undergo a urinalysis testing.

The Plaintiff was able to hear the conversation between the Texas Med Clinic representative and the Defendant, *CPS ENERGY*. After this conversation, the Texas Med Clinic representative advised the Plaintiff "You need to get off our premises. Your employer advised us to let you know that you need to leave." The clinic representative made a note stating: "Per Lisa, Random for this pt. is not approved." The Defendant clearly insinuated themselves into this business transaction and the Plaintiff clearly was on the losing end. Plaintiff would like to enter into evidence Exhibit "A", clearly showing this notation.

Plaintiff is stating that on May 11, 2018, the Defendant, *CPS ENERGY*, terminated him. Plaintiff's long standing career citing his "failure to provide urine sample for testing without a valid medical explanation.." Plaintiff would like to enter into evidence Exhibit "B".

Plaintiff would also like to enter into evidence Exhibit "C", in which are his personal notes showing how diligently the Plaintiff had tried to resolve his issue.

Plaintiff also has completed his Administrative Remedies through the EEOC. Records are available if requested through the Discoveries.

Plaintiff would also like to state, that the EEOC has given him a Letter to sue.

Plaintiff would like to state to the Honorable Courts that it clearly shows that the Defendant's willful, overt actions that led to the Plaintiff's termination e.g. refusing him an opportunity to retest at its facility and ordering him removed from the Texas Med Clinic premises.

DOCUMENT SCANNED AS FILED

Plaintiff feels that this was done on purpose because he wrote a grievance against another CPS employee.

The Defendant could have conducted any other drug testing for the Plaintiff, but they just clearly refused because they just wanted the Plaintiff out of their employment.

The Defendant's DOT policy clearly states that:

> "DOT regulations prohibit you from refusing a test. The following are examples of conduct that the regulations define as refusing a test...."Failure to undergo a medical evaluation as part of "shy bladder" or "shy lung".""

Thus, a failure to undergo a medical evaluation will equate to a refusal to test. However, the Plaintiff did undergo a medical evaluation, by Dr. Pascale. The Defendant refused to accept Dr. Pascale's assessment. The Plaintiff clearly followed all procedures given to him, and therefore his termination should have never occurred.

If the Plaintiff was a drug and alcohol user he would have never undergone such an extensive search for a retest and resolution to his problem. So therefore, Plaintiff feels that he had been racially discriminated against.

The Defendant reneged on its promise to grant the Plaintiff (five) 5 days to obtain a medical release because he was terminated (three) 3 days after the alleged "refusal to test." The Defendant was so eager to terminate the Plaintiff that the Defendant terminated him prematurely and deliberately sabotaged his efforts to remediate his inability to empty his bladder so soon after using the restroom that morning prior to going to work.

The Defendant clearly showed no remorse for how they handled the Plaintiff who had been working diligently for *CPS ENERGY* for (six) 6 years without ever having had a positive drug test and after he began being selected for testing, in which ironically came forward in making a complaint against another *CPS ENERGY* employee, Shan Davis (Caucasian), his Superiors decided to terminate him.

The Plaintiff would have passed this random and embarrassing urinalysis testing, because he does not use any drugs not alcohol. Plaintiff is willing to voluntarily undergo a hair follicle testing for the Honorable Court, to prove that he is not using any drugs nor alcohol.

Plaintiff feels that Employers should be encouraged to take appropriate steps to prevent and correct unlawful harassment. They should clearly communicate to employees that unwelcome harassing conduct will not be tolerated. They can do this by establishing an effective complaint or grievance process, providing anti-harassment training to their managers and employees, and taking

DOCUMENT SCANNED AS FILED

immediate and appropriate action when an employee complains. Employers should strive to create an environment in which employees feel free to raise concerns and are confident that those concerns will be addressed. Petitioner feels that this kind of Prevention was not in place. But what should someone do if this abuser is the employee's supervisor, manager or both.

Plaintiff would like to state that after he had been dismissed from his position, he was told that the Defendant, *CPS ENERGY* is notorious for their continued race discrimination and that they just had not been found out because of their "buddy" system that is in place.

Plaintiff is aware that the Law also states that Employees are encouraged to inform the harasser directly that the conduct is unwelcome and must stop. Employees should also report harassment to management, but who will report an abuse from management, at an early stage to prevent its escalation. Racial discrimination consisting of harassment is actionable under Title VII. Title VII's prohibition of discrimination." *78 Stat. 255, as amended, 42 U.S.C. § 2000e-2(a)(1).*

The applicable standard, here reaffirmed, is stated in EEOC v. Blockbuster, Inc., C.A. No. 1:07-cv-02221 (S.D.N.Y. filed settled Apr. 7, 2008). Title VII is violated when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a discriminatory hostile or abusive working environment, id., at 64, 67. This standard requires an objectively hostile or abusive environment one that a reasonable person would find hostile or abusive as well as the victim's subjective perception that the environment is abusive.

> Whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere Page II offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well being is relevant in determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

> Reversal and remand are required because the District Court's erroneous application of the incorrect legal standard may well have influenced its ultimate conclusion that the work environment was intimidating or abusive to Plaintiff, especially given that the court found this to be a "close case." P. 6. 976 F.2d 733, reversed and remanded.

Plaintiff would like to state that he considers the definition of a discriminatorily "abusive work environment" (also known as a "hostile work environment") under Title VII of the Civil Rights Act of

DOCUMENT SCANNED AS FILED

1964, 78 Stat. 253, as amended, 42 U.S.C. 2000e et seq. (1988 ed., Supp. III). EEOC v. Applebee's Int'l Inc., No. 1:02-CV-829 (D. Ga. Aug. 7, 2003).

Plaintiff would also like to point out that the Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1). As we made clear in EEOC v. Pioneer Hotel, Inc. d/b/a Pioneer Hotel and Gambling Hall, Case No. 2:11-CV-01588-LRH-GWF (D. Nev. June 17, 2015). It was clear that this language "is not limited to "economic" or "tangible" discrimination.

The phrase "terms, conditions, or privileges of employment" evinces a congressional intent "to strike at the entire spectrum of disparate treatment of men and women" in employment," which includes requiring people to work in a discriminatorily hostile or abusive environment. Id., at 64, quoting Los Angeles Dept. of Water and Power v. Manhart.

Plaintiff states that when the workplace is permeated with "discriminatory intimidation, ridicule, and insult," 477 U.S., at 65, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," id., at 67 (internal brackets and quotation marks omitted), Title VII is violated.

Plaintiff also states that the reference in that case to environments "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers,'" supra, at 66, quoting *Rogers v. EEOC, 454 F.2d 234, 238 (CA5 1971), cert. denied, 406 U.S. 957 (1972)*, merely present some especially egregious examples of harassment. They do not mark the boundary of what is actionable.

Title VII makes it an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such person's race, color, religion, sex, or national origin.
42 U.S.C. § 2000e-2(a) (1).

In enforcing Title VII's prohibition of race and color discrimination, the EEOC has filed, resolved, and adjudicated a number of cases since 1964. Under the E-RACE Initiative, the Commission continues to be focused on the eradication of race and color discrimination from the 21st century workplace and is seeking to retool its enforcement efforts to address contemporary forms of overt, subtle and implicit bias. Below is an in exhaustive list of significant EEOC private or federal sector cases from 2003 to present. These cases illustrate some of the common, novel, systemic and emerging issues in the realm of race and color discrimination.

DOCUMENT SCANNED AS FILED

## VII. DAMAGES AND OTHER RELIEF REQUESTED

Through this action, Plaintiff seeks $5,000,000.00 in compensation including all damages suffered by Plaintiff as a result of Defendant's actions, punitive and/or statutory damages as allowed by law, Legal Assistant fees, pre and post-judgment interest to the maximum extent allowed by law, costs and all other relief to which Plaintiff is entitled.

Plaintiff would like to pray to the Courts to hold the Defendants, *CPS ENERGY* responsible for their actions and conduct towards the Plaintiff.

· Plaintiff, *SAMUEL L. OWENS* would also like to pray to the Courts that he should be compensated for his emotional and mental anguish and adjustment disorder with mixed features.

Plaintiff also would like to pray for a thorough investigation into this *CPS ENERGY* actions towards the Plaintiff.

SUBSCRIBED AND SWORN TO
BEFORE ME, on the 13TH
day of November, 2018

*Petra Schmitt*
NOTARY PUBLIC
My Commission expires: 2021

Petra Ashley Schmitt
My Commission Expires
02/23/2021
ID No. 131016238

Respectfully submitted,

SAMUEL L. OWENS
Plaintiff
2600 NE Loop 410
San Antonio, Tx 78217
samuelowens17@gmail.com
210-637-7714

DOCUMENT SCANNED AS FILED

# ACKNOWLEDGMENT

The State of Texas      )

County of Bexar         )

Before me, Petra Schmitt, on this day personally appeared *SAMUEL L. OWENS*, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and official seal this 13th day of November, 2018.

SUBSCRIBED AND SWORN TO
BEFORE ME, on the 13th
day of November, 2018.

*Petra Schmitt*
NOTARY PUBLIC
My Commission expires:  2021

Petra Ashley Schmitt
My Commission Expires
02/23/2021
ID No. 131016238

Respectfully submitted,

SAMUEL L. OWENS
Plaintiff
2600 NE Loop 410
San Antonio, Tx 78217
samuelowens17@gmail.com
210-637-7714

DOCUMENT SCANNED AS FILED

# EXHIBIT "A"
# TEXAS MED CLINIC NOTES

DOCUMENT SCANNED AS FILED

**Owens , Samuel**



**Texas MedClinic**
For Life's Little Emergencies

ES4811000

| AGE | SEX | M-STAT | DOB | SSN | PREV VIS | DOS | | RMW |
|-----|-----|--------|-----|-----|----------|-----|---|-----|
| 55 | M | O | 2/17/1963 | | | 5/8/2018 | | |

| GUARANTOR | | TYPE | | CARRIER | | Time |
|-----------|---|------|---|---------|---|------|
| Owens , Samuel | | Occupational - eScreen | | eScreen/CPS Energy DT Collections C | | Tech Initial |

**Chief Complaint** OCC RANDOM CPS ENERGY
**Med Allergies**
**Medications**
**Problem List**

| LAST TETANUS | | PREG? NA | FDLMP NA | DOI 5/8/2018 | APPT | | APPT DR | |
|--------------|---|----------|----------|--------------|------|---|---------|---|

| TEMP °F | BP | BP Pos | PLS | RESP | PLS Ox % | HT | WT | BMI | OD | OS | OU | Correction | MA | RECORDED |
|---------|-----|--------|-----|------|----------|-----|-----|-----|-----|-----|-----|------------|-----|----------|

HISTORY OF PRESENT ILLNESS

*Per Lisa, Random for this Pt.*
*Is not approved*

| | |
|---|---|
| Const | VS, Appearance |
| Eyes: | Lids, Conj, Pupil, Fundus, Cornea |
| ENT: | Auricle, EAC/TM, Hearing, Pharynx, Nares |
| Neck: | Mass, Thyroid |
| Resp: | Effort, Rales, Rhonchi, Wheeze |
| CV: | Rate, Rhythm, Murmur, Distal Pulses, Edema |
| Abd: | BS, Tender, HSM, Umb/Vent Hernia, CVAT |
| MS: | Gait, Inspection, ROM, Strength |
| Lymph | Neck, Axillary |
| Derm: | Rash, Induration |
| Neuro: | CN, DTR, Sensation, Romberg |
| Psych | Ox3, Judge/Insight, Memory, Mood/Affect |

Normal (Abnormal)   Unmarked = Not Examined

| ORDERS | RESULTS | Charge Entry By | STAFF | CODE |
|--------|---------|-----------------|-------|------|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| DIAG #1 | | DIAG #3 | |
|---------|---|---------|---|
| DIAG #2 | | DIAG #4 | |

| ☐ RTC or ED if no imprvmt | ☐ RTC In | **FOLLOW UP INST** |
|---------------------------|----------|---------------------|
| in ___ to ___ hrs | ___ days | |
| ☐ F/U w/PCP in ___ days | ☐ Rx to Pt | |
| ☐ F/U Instr given to Pt | ☐ Rx faxed | |

| **Owens , Samuel** | DOCTOR SIGNATURE | DOCTOR NAME | RECP INITIALS | TIME OUT |
|--------------------|------------------|-------------|---------------|----------|

7460 IH 35 North  San Antonio, TX  78218-2700   Phone (210) 655-5529  Fax (210) 655-5504

# EXHIBIT "B"
# TERMINATION LETTER

DOCUMENT SCANNED AS FILED



May 11, 2018

Mr. Samuel Owens
2600 NE Loop 410 #510
San Antonio, TX  78217

Dear Mr. Owens:

This letter is to inform you that your employment with CPS Energy is terminated effective today, May 11, 2018. This decision is based on your failure to provide urine sample for testing without a valid medical explanation after receiving notice for testing under the CPS Energy DOT Alcohol-Drug-Free Workplace Policy.

In accordance with CPS Energy policy, you are required to return all CPS Energy property that is currently in your possession.

Information regarding your Health Benefits explaining your options will be mailed to your home or you can contact Employee Benefits at (210) 353-2900.

Sincerely,

Richard Lujan
Director, Distribution Construction & Maintenance


cc: Jennifer Miller, Sr. HR Generalist
    Personnel File


145 Navarro/ P. O. Box 1771          San Antonio, Texas  78296-1771          (210) 353-2000


DOCUMENT SCANNED AS FILED

# EXHIBIT "C"
# PERSONAL NOTES

# Tx Dot Drug & Alcohol Policy

U.S. Dept of Transportation
(202) 366-3784
* Name of Person spoke with:
Commercial Motor Carriers (CDL)

* Specimens Collected for Drug & Alch.
Testing  Urine = Drugs

* Dispute Resolution Office

Pg. 11 If you test positive, refuse a
test, or violate DOT drug & alcohol rules:

• A supervisor or company official will
immediately remove you from DOT-regulated
safety sensitive functions.

• You will not be permitted to return to
performing DOT regulated safety-sensitive
duties until you have:

• undergone an evaluation by a SA Prof. (SAP)

• Successfully completed any education,
counseling or treatment prescribed by
the SAP prior to returning to service
and

* provided a negative test result for
drugs and/or a test result of less than
0.02 for alcohol (Return to Duty Testing)

EEOC - WWW. EEOC. GOV (WEBSITE)
(HOW TO FILE A CHARGE)
CALLED FOR APPOINTMENT 5/24/18
SPOKE WITH: TONYA
REF# 180524-000121

EEOC                          TWC VIRGINIA ORTIZ
                              (915) 832-6452
GODSMAN 88!

INQUIRY # 451-2018-02818

APPOINTMENT: JUNE 18, 2018 @ 8:00
                    * ARLENE            AM
DIRECTOR: TRAVIS HICKS

                              RICHARD LUJ.
CALLED ME TO INFORM ME THAT MY
EMPLOYMENT WAS BEING TERMINATED.

MAY 14, 2018 FILED FOR UNEMPLOYMENT.
MAY 23, 2018 FILLED OUT EEOC QUESTIONAIRE
MAY 29, 2018 TWC CALLED FOR INTERVIEW
(VS. VIRGINIA ORTIZ)
MAY 3, 2018 RECIEVED FIRST BENEFIT CHECK
JUNE 18, 2018 INTERVIEW W/ EEOC INVESTIGATOR
JUNE 28, 2018 RECIEVED NOTICE & RIGHT TO SUE

# Timeline

MAY 8, 2018   GIVEN NOTICE TO TAKE RANDOM DRUG TEST @ 6:25AM BY MGR DAVID MILLER.

@ APROX 10:00 I WAS SUSPENDED BY MANAGEMENT AND SENT HOME W/ PAY.

@ APROX 3:00 I WENT TO TEXAS MED CLINIC TO GET A DOT DRUG TEST. ACPS *LISA REP DENIED MY REQUEST AND TOLD THE RECEPTIONIST TO ASK ME TO LEAVE THE PREMISES.

                              * DR. PASKILL?
*I CALLED THE M.RO THAT MORNING ALSO AND HE TOLD ME TO CALL CPS AND REQUEST A RE-TEST. They DECLINED
*(NATIONWIDE MEDICAL REVIEW)(317) 547-8620
* CALLED HR COMPLIANCE (CLEVETTE HALL)
1:43 ON MAY 11, 2018 DIR. RICHARD LUJAN CALLED ME TO INFORM ME THAT MY EMPLOYMENT WAS BEING TERMINATED.

MAY 14, 2018 FILED FOR UNEMPLOYMENT.
MAY 23, 2018 FILLED OUT EEOC QUESTIONAIRE
MAY 29, 2018 TWC CALLED FOR INTERVIEW
(Ms. VIRGINIA ORTIZ)
MAY 31, 2018 RECIEVED FIRST BENEFIT CHECK
JUNE 18, 2018 INTERVIEW W/ EEOC INVESTIGATOR

# ATTORNEYS

NOLO. COM

AND. Com

DON TITTLE - WACO - DALLAS

X MS. VIRGINIA ORTIR TWC

5/29/18    1:08 p.m.

RE - TWC DETERMINATION RULING

(915) 832-6452

ROSENBERG / SPROVACH

713 960-8300

DOCUMENT SCANNED AS FILED

# Timeline

JUNE 18, 2018 INTERVIEWED WITH EEOC INVESTIGATOR ARLENE TILLMAN

JUNE 28, 2018 RECIEVED MY NOTICE OF RIGHTS - TO - SUE letter FROM EEOC

AUGUST 2, 2018 CALLER ATTORNEY KATRINA PATRICK

Ms. BELL
(713) 796 8218

855 976-2946

CONSULTATION WITH MS. PATRICK

TUESDAY AUG 7, 2018 @ 9:30AM

KATRINA PATRICK ATTORNEY
6575 WEST LOOP SOUTH, #500
BELLAIRE, TX 77401

DARRELLS OFFICE

3443 BLODGETT ST

HOUSTON, TX 77004

## HEALTH INSURANCE

CUSTOMER SERVICE

* FIRST HEALTH          * STEVEN (855) 209-7855
* LIBERTY HEALTH            X 204

$ 522.73   TOTAL      8/13/18  (PAID)   * 3160

## HEALTH BENEFITS

* 352.78  MONTH   TOTAL

* 193.95   HEALTH          DUE ON 14th OF
* 47.93    RX              EACH MONTH
* 53.97    DENTAL/VISION
* 56.93    WELLNESS (BLOOD/LAB)
CONFIRMATION # EHS 7565

SEPT 14 (1st DR's APPOINTMENT)

MEMBERSHIP ID# LBH 6106529

DR. WHITNEY   (210) 804-6000

FIRST HEALTH PROVIDERS 1   800 226 5116
WWW. FIRSTHEALTH . COM

Dear Sir / Madam:

Charging Party respectfully requests the issuance of a "right to sue" letter. Enclosed herewith please find a copy of the charge of discrimination filed with the EEOC as well as a copy of the Dismissal and Notice of Rights issued by th EEOC.

EEOC Charge No. 451-2018-02818

Kristina Bianco — Senior Paralegal

PDF Scanned → Send.

\* crd.notices @ twc.state.tx.us

DOCUMENT SCANNED AS FILED

* CRDnotices@twc.state.tx.us

EEOC Charge No. 451-2018-02818

Dear Ms. Gonzalez

I, Samuel Owens, the Complaintant in the above Charge of Discrimination hereby request a "Right To Sue" letter from Texas Workforce Commission (CRD). My EEOC Charge was filed on June 18, 2018 at 9:59 a.m.

Thank You

* ZERO HARM - CPS MOTTO

STAYING SAFE ON THE JOB AND AT HOME.

STAYING HYDRATED AND NOT WAITING TO GET THIRSTY. I WAS HYDRATING AND URINATING THROUOUT THE NIGHT PRIOR TO THIS RANDOM DRUG TEST. CPS ENERGY WANTS NO ONE TO GET DE HYDRATED BUT WHEN AN EMPLOYEE IS HYDRATING TO KEEP FROM HAVING HEAT RELATED ILLNESSES AND CANNOT GIVE A URINE SAMPLE (RANDOMLY) HE IS TERMINATED. IN 9 YEARS WORKING IN ALL KINDS OF WEATHER OUTDOORS, MR. OWENS HAS NEVER HAD AN ON THE JOB INJURY, NO TICKETS, ACCIDENTS (COMPANY OR CUSTOMER) NO CORRECTIVE ACTIONS, AND HAS HAD POSITIVE EVALUATIONS.

* CONSIDERING HIS AGE (55 AT THE TIME OF THE TEST.) AND TERMINATION IT COULD BE A CASE OF AGE DISCRIMINATION AS WELL

SAYL - VOLUNTEER OF THE MONTH